1

2

3

4                        **UNITED STATES DISTRICT COURT**

5                            EASTERN DISTRICT OF CALIFORNIA

6

7    IBRAHIMA WANE,                          Case No.  1:22-cv-00813-JLT-BAM (PC)

8                    Plaintiff,              FINDINGS AND RECOMMENDATIONS TO
                                             GRANT DEFENDANTS' MOTION FOR
9         v.                                 SUMMARY JUDGMENT FOR FAILURE TO
                                             EXHAUST ADMINISTRATIVE REMEDIES
10   KORKOR, *et al.*,
                                             (ECF No. 36)
11                   Defendants.
                                             **FOURTEEN (14) DAY DEADLINE**
12

13   **I.      Introduction**

14         Plaintiff Ibrahima Wane ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

15   *pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on

16   Plaintiff's first amended complaint against Defendants Chen and Kokor[1] for failure to treat

17   Plaintiff's side effects caused by the Celexa medication, in violation of the Eighth Amendment.

18         Currently before the Court is Defendants' motion for summary judgment on the grounds

19   that: (1) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation

20   Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); and (2) Plaintiff's claims preceding July 1, 2018,

21   are beyond the statute of limitations without applicable exception.  (ECF No. 36.)[2]  Plaintiff filed

22   an opposition to the motion for summary judgment on February 2, 2024.  (ECF No. 39.)

23   Defendants filed a reply on February 9, 2024.  (ECF No. 49.)  Defendants' motion for summary

24   judgment is fully briefed.  Local Rule 230(l).  For the reasons set forth below, the Court

25   recommends that Defendants' motion for summary judgment be granted.

26   ───────────────
     [1] Erroneously sued as "Chain" and "Korkor."

27
     [2] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for
28   summary judgment.  (ECF No. 36-2.); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d
     952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

                                                   1

1   **II.      Legal Standards**

2        **A.      Summary Judgment**

3        Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

4   and any affidavits provided establish that "there is no genuine dispute as to any material fact and

5   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is

6   one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty*

7   *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

8   reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

9        The party seeking summary judgment "always bears the initial responsibility of informing

10  the district court of the basis for its motion, and identifying those portions of the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

12  which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

13  *Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies

14  depending on whether the issue on which summary judgment is sought is one in which the

15  movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty*

16  *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at

17  trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

18  the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will

19  have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

20  absence of evidence to support the nonmoving party's case." *Id.*

21       If the movant satisfies its initial burden, the nonmoving party must go beyond the

22  allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

23  evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929

24  (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not

25  suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

26  U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its

27  opponent must do more than simply show that there is some metaphysical doubt as to the material

28  facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of

1   fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S.

2   at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

3        In resolving a summary judgment motion, "the court does not make credibility

4   determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he

5   evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

6   in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the

7   nonmoving party must produce a factual predicate from which the inference may reasonably be

8   drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

9   *aff'd*, 810 F.2d 898 (9th Cir. 1987).

10       In arriving at these findings and recommendations, the Court carefully reviewed and

11   considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

12   facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

13   reference to an argument, document, paper, or objection is not to be construed to the effect that

14   this Court did not consider the argument, document, paper, or objection. This Court thoroughly

15   reviewed and considered the evidence it deemed admissible, material, and appropriate.

16       **B.     Statute of Limitations**

17       Section 1983 contains no specific statute of limitations. Therefore, federal courts apply

18   the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918,

19   927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*,

20   192 F.3d 911, 914 (9th Cir. 1999). California's statute of limitations for personal injury actions is

21   two years. Cal. Civ. Proc. Code § 335.1; *Jones*, 393 F.3d at 927; *Maldonado*, 370 F.3d at

22   954−55.

23       Federal law determines when a civil rights claim accrues, and "[u]nder federal law, a

24   claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause

25   of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted);

26   *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914.

27       In actions where the federal court borrows the state statute of limitations, courts should

28   also borrow all applicable provisions for tolling the limitations found in state law. *Jones*, 393

3

1    F.3d at 927.  Under California law, the two-year statute of limitations is tolled during the time a

2    prisoner pursues his administrative remedies and is potentially tolled up to an additional two

3    years if Plaintiff is incarcerated for a term of less than life.  *Douglas*, 567 F.3d at 1109 ("State law

4    governs the statute of limitations period for § 1983 suits and closely related questions of tolling.

5    Section 1983 claims are characterized as personal injury suits for statute of limitations purposes"

6    (citations omitted)); *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute

7    of limitations must be tolled while a prisoner completes the mandatory exhaustion process."); Cal.

8    Civ. Proc. Code §§ 335.1, 352.1(a).

9        California law also provides for equitable tolling of the statute of limitations where a

10    plaintiff meets three conditions: "(1) defendant must have had timely notice of the claim;

11    (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and

12    (3) plaintiff's conduct must have been reasonable and in good faith."  *Fink*, 192 F.3d at 916

13    (citation and quotation marks omitted); *see also Addison v. State of Cal.*, 21 Cal. 3d 313, 319

14    (1978) (citations omitted).

15        **C.    Exhaustion of Administrative Remedies**

16        Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action

17    shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

18    law, by a prisoner confined in any jail, prison, or other correctional facility until such

19    administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is

20    required regardless of the relief sought by the prisoner and regardless of the relief offered by the

21    process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to

22    all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

23        The failure to exhaust is an affirmative defense, and the defendants bear the burden of

24    raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*,

25    747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint,

26    a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise,

27    the defendants must produce evidence proving the failure to exhaust, and they are entitled to

28    summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most

4

1    favorable to the plaintiff, shows he failed to exhaust.  *Id.*

2         Defendants must first prove that there was an available administrative remedy and that

3    Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th

4    Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to

5    Plaintiff to show something in his particular case made the existing and generally available

6    administrative remedies effectively unavailable to him.  *Williams*, 775 F.3d at 1191 (citing

7    *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue

8    of exhaustion remains with Defendants.  *Id.* (quotation marks omitted).

9         Effective June 1, 2020, the California prison grievance system has two levels of review.

10   Cal. Code Regs. tit. 15, § 3480, *et seq.*  Pursuant to this system, an inmate may "dispute a policy,

11   decision, action, condition, or omission by the Department or departmental staff that causes some

12   measurable harm to their health, safety, or welfare."  *Id.* § 3481(a).  Inmate claimants are required

13   to "describe all information known and available to the claimant regarding the claim, including

14   key dates and times, names and titles of all involved staff members (or a description of those staff

15   members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]"  *Id.*

16   § 3482(c).  In response, the inmate claimant will receive a written decision from the Institutional

17   or Regional Office of Grievances clearly explaining the reasoning for the Reviewing Authority's

18   decision as to each claim.  *Id.*  The inmate claimant has the ability to submit a written appeal

19   concerning one or more claims to dispute the decision by the Institutional or Regional Office of

20   Grievances, and in response will receive a written decision from the Office of Appeals clearly

21   explaining the reasoning for the decision as to each claim.  *Id.*  Generally, "[c]ompletion of the

22   review process by the Office of Appeals constitutes exhaustion of all administrative remedies

23   available to a claimant within the Department."  *Id.* § 3486.

24   **III.    Discussion**

25        **A.    Undisputed Material Facts ("UMF")**[3]

26   ───────────────

27   [3] *See* Defendants' Separate Statement of Material Facts in Support of Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.  (ECF No. 36-3.)  Plaintiff did not provide a separate statement of undisputed facts in his opposition.  Local Rule 260(a).  As a result, Defendants' Separate Statement of Material Facts is accepted except where brought into dispute by Plaintiff's verified First Amended Complaint.  *See Jones v. Blanas*,

28   393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's

5

1.   Plaintiff Ibrahima Wane ("Plaintiff") was an inmate incarcerated by the California Department of Corrections and Rehabilitation ("CDCR"), and was housed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California, from 2017 to 2019, the time-frame of the alleged incidents.  (*See generally*, ECF No. 15 (First Amended Complaint ("FAC")).)

2.   Plaintiff brings this action under 42 U.S.C. § 1983, alleging claims of deliberate indifference to serious medical needs against Defendants Doctors Chen and Kokor.  (*Id.*)

3.   Defendant Chen was employed by CDCR as a psychologist and Defendant Kokor was employed by CDCR as a physician at the time the alleged events occurred.  (*Id.* at 2–3.)

4.   Plaintiff claims he was seen by Defendant Kokor on June 9, 2017, for swollen, painful lumps in his breasts, which leak discharge.  Defendant Kokor allegedly diagnosed the problem as stemming from Plaintiff's psychotropic medication, Celexa, which was prescribed by Defendant Chen in or before 2017.  Defendant Chen allegedly discontinued the medication.  According to Plaintiff, Defendants Chen and Kokor told Plaintiff nothing more could be done about his current condition.  Plaintiff alleges that he now has female breasts that leak due to the now discontinued medication.  (*Id.* at 3–4.)

5.   The Court found Plaintiff's operative first amended complaint "arguably sets forth two theories of Eighth Amendment liability for inadequate medical care: (1) for Dr. [Chen's] initial prescribing of the Celexa medication that allegedly caused the injuries and (2) for the failure by [Drs. Chen and Kokor] to treat the injury after the condition arose."  (ECF No. 18 at 2.)

6.   CDCR, which includes California Correctional Health Care Services ("CCHCS"), has an administrative remedies process in place for all inmate health care grievances and had this process in place during the time-frame relevant to Plaintiff's claims.  (ECF No. 36-4 ("Silkwood Decl.") ¶¶ 3–7.)

///

_____

personal knowledge of specific facts which are admissible in evidence).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

6

1    7. Inmate health care grievances are subject to two levels of review, an institutional level of

2       review and headquarters level of review.  Health care grievances must be accepted and

3       processed at the headquarters' level before administrative remedies are exhausted for that

4       grievance.  (*Id.* ¶ 7.)

5    8. Plaintiff submitted two health care grievances concerning the events alleged in the

6       complaint: SATF HC 17065229 and SATF HC 18001577.  (FAC at 8; Silkwood Decl.

7       ¶¶ 16–17, Exs. H & I.)

8    9. Plaintiff prepared health care grievance number SATF HC 17065229 on July 16, 2017.

9       The grievance contained allegations that Plaintiff went to a medical appointment on June

10       9, 2017, complaining of painful and swollen breasts that leak discharge when he takes

11       medication, and requested medical treatment for his breasts.  (Silkwood Decl. ¶ 16, Ex. H

12       at 6–9.)

13    10. The institutional level response granted Plaintiff's request in that he was examined by his

14       primary care physician who referred Plaintiff back to mental health for evaluation of his

15       medications.  Specifically, Defendant Kokor saw Plaintiff on August 2, 2017, and noted

16       bilateral breast tissue enlargement, but noted that Plaintiff did not report any tenderness,

17       lumps, or discharge.  Plaintiff told Defendant Kokor that a medication prescribed by a

18       mental health provider can cause breast enlargement.  In response, Defendant Kokor

19       ordered that Plaintiff be referred back to mental health to consider a medication update.

20       (*Id.* ¶ 16, Ex. H at 5.)

21    11. Plaintiff appealed, claiming that he reported swollen, painful breasts that leak discharge to

22       Defendant Kokor on August 2, 2017, and that he was dissatisfied with Defendant Kokor's

23       decision to refer Plaintiff back to mental health to discuss medication.  (*Id.* ¶ 16, Ex. H at

24       3–4.)

25    12. On January 24, 2018, the Health Care Correspondence and Appeals Branch denied

26       Plaintiff's appeal, stating that the medication that was suspected of causing the breast

27       tenderness had been discontinued.  The decision further explained that the Health Care

28       Correspondence and Appeals Branch decision exhausted the claims raised in health care

1      grievance number SATF HC 17065229.  (*Id.* ¶ 16, Ex. H at 1–2.)

2   13. Plaintiff prepared health care grievance number SATF HC 18001577 on July 22, 2018.

3       Plaintiff alleged that he saw Defendant Kokor on or around July 17, 2018 regarding his

4       "serious medical issue that caused [him] to grown female breast[s] that causes breast

5       discharge, [and] unbearable pain."  Defendant Kokor allegedly told Plaintiff there was

6       nothing he could do.  Plaintiff requested surgery to "correct the issue of painful leaking

7       breast[s]," which he contends was caused by medication prescribed by "(CDCR) staff."

8       (*Id.* ¶ 17, Ex. I at 3–7.)

9   14. A disposition of no intervention was rendered at the institutional level on September 11,

10      2018, and Plaintiff was explicitly instructed that a headquarters' level review constitutes

11      the final disposition of his health care grievance and would exhaust his administrative

12      remedies.  (*Id.* ¶ 17, Ex. I at 1–2.)

13  15. There is no record of Plaintiff ever submitting SATF HC 18001577 to the headquarters'

14      level for review.  (*Id.* ¶ 17, Ex. A.)

15  16. In SATF HC 17000236, deemed a staff complaint as SATF SC 17000015, Plaintiff

16      alleged he was improperly denied medication on October 21, 2017.  (*Id.* ¶ 10, Ex. B.)

17  17. In SATF HC 22000083, Plaintiff alleged inadequate treatment for blood in his stool.  (*Id.*

18      ¶ 11, Ex. C.)

19  18. In SATF HC 22001080, Plaintiff alleged inadequate treatment for rashes on his hands and

20      feet.  (*Id.* ¶ 12, Ex. D.)

21  19. In SATF HC 22001434, Plaintiff requested to be seen by a provider for pain and bleeding

22      during urination.  (*Id.* ¶ 13, Ex. E.)

23  20. In SATF HC 22001469, Plaintiff again requested to be seen by a provider for pain and

24      bleeding during urination.  (*Id.* ¶ 14, Ex. F.)

25  21. In SATF HC 23000189, Plaintiff alleged inadequate treatment for bleeding.  (*Id.* ¶ 16, Ex.

26      G.)

27  ///

28  ///

1 **B.     Parties' Positions**

2       Defendants contend that Plaintiff's claims concerning Defendants' treatment prior to July

3   1, 2018 are barred by the statute of limitations and equitable tolling is not applicable.  Plaintiff

4   then failed to exhaust available administrative remedies regarding Defendants' medical treatment

5   after July 1, 2018.  The Court should grant Defendants' motion for summary judgment and

6   dismiss this case.

7       In opposition, Plaintiff argues that he exhausted his administrative remedies with no

8   foreseeable resolutions, and attaches copies of documents related to his health care grievance

9   number 17065229.  Plaintiff further appears to argue that he has communication limitations

10   which require him to obtain assistance in filing documents.  Plaintiff expresses disappointment

11   with alleged due process violations by CDCR's refusal to acknowledge negligence and lasting

12   effects of his once-prescribed medications.

13       In reply, Defendants argue that Plaintiff does not address Defendants' argument that

14   Plaintiff's pre-July 1, 2018 allegations are barred by the statute of limitations or that his post-July

15   1, 2018 claims were not exhausted.  Plaintiff's failure to address these arguments should be

16   construed as a waiver or abandonment of the issue, warranting dismissal of his claims.  Plaintiff's

17   claims must be dismissed because he did not establish that there is a genuine issue for trial, and

18   Defendants are entitled to judgment as a matter of law.

19   **C.     Analysis**

20       Based on the undisputed facts, the Court finds that Plaintiff's claims arising from medical

21   treatment received before July 1, 2018 are barred by the statute of limitations, and Plaintiff failed

22   to exhaust administrative remedies regarding his medical treatment after July 1, 2018.  The Court

23   recommends that Defendants' motion for summary judgment be granted and Plaintiff's claims be

24   dismissed, with prejudice.

25               1.     Plaintiff's Claims Before July 1, 2018

26       It is undisputed that, as of January 24, 2018, Plaintiff fully exhausted his administrative

27   remedies with respect to SATF HC 17065229, in which Plaintiff complained of painful and

28   swollen breasts that leak discharge when he took his medication.  UMF 9, 12.  Plaintiff filed this

1    action on July 1, 2022.  (ECF No. 1.)  Pursuant to California's statute of limitations for personal

2    injury actions and statutory tolling for prisoners incarcerated for a term of less than life, the

3    effective statute of limitations period for § 1983 actions is four years.  Cal. Civ. Proc. Code

4    § 335.1, 352.1(a).  Therefore, Plaintiff's claims regarding inadequate medical treatment prior to

5    July 1, 2018—four years before this action was filed—are barred by the statute of limitations

6    unless Plaintiff demonstrates that he is entitled to additional equitable tolling.

7         Plaintiff has raised no argument in opposition to Defendants' contention that his claims

8    arising from events prior to July 1, 2018 are barred by the statute of limitations.  While Plaintiff's

9    opposition to the summary judgment motion appears to raise an argument regarding Plaintiff's

10    ability to communicate effectively, it is not clear that Plaintiff is arguing that this limitation

11    applied at any time prior to the filing of this action, or that the limitation would arise to the level

12    of a "disability" or a lack of legal capacity to make decisions such that further equitable tolling

13    would apply.  *See* Cal. Civ. Proc. Code § 352(a).  Plaintiff makes no allegations to demonstrate

14    that any equitable tolling should apply or to explain the six-month delay in bringing this action.

15    Accordingly, although Plaintiff fully exhausted his administrative remedies with respect to SATF

16    HC 17065229, all claims arising from Plaintiff's medical treatment prior to July 1, 2018 are

17    barred by the statute of limitations.

18                    2.       Plaintiff's Claims After July 1, 2018

19         It is also undisputed that Plaintiff did not fully exhaust any administrative remedies with

20    respect to his claims in this action for any medical treatment that occurred after July 1, 2018.

21    UMF 13–15.  Plaintiff's opposition references only SATF HC 17065229, which cannot serve to

22    exhaust Plaintiff's later claims.  While Plaintiff includes an exhibit confirming that he filed SATF

23    HC 18001577 requesting "surgery to correct issue with leaking breasts," the exhibit shows only

24    that the grievance was filed at the institutional level, not that it was exhausted to the headquarters

25    level.  (ECF No. 39, p. 9.)  Plaintiff does not explain whether he ever attempted to appeal to the

26    headquarters level, and there is no record that Plaintiff did so.  UMF 15.  Accordingly, Plaintiff

27    failed to exhaust his administrative remedies with respect to any claims arising after July 1, 2018.

28    ///

1                   3.        Continuing-Violations Doctrine

2          Although not raised by the parties, the Court finds it appropriate to address the continuing-

3  violations doctrine following the recent decision in *Sheltra v. Christensen*, 124 F.4th 1195 (9th

4  Cir. 2024).  In *Sheltra*, the Ninth Circuit held that under the continuing-violations doctrine, "a

5  properly exhausted prison grievance asserting 'one, continuing harm or a single course of

6  conduct' can exhaust events arising out of the same alleged violation that occur after the

7  grievance was made."  124 F.4th at 1203 (citing *Morgan v. Trierweiler*, 67 F.4th 362, 369–70

8  (6th Cir. 2023)).  The Ninth Circuit held that because the plaintiff in *Sheltra* was "not asserting in

9  this case a new harm or course of conduct from that which was the subject of his prison

10 complaints[,]" the continuing-violations doctrine applied and a March grievance process

11 administratively exhausted a subsequent April attack.  *Id.* at 1204–05.

12         To the extent Plaintiff contends that the actions or inactions of Defendants were a

13 "continuing violation" that would permit him to proceed on later claims based on an earlier

14 exhausted grievance, the Court finds that *Sheltra* is not applicable.  In SATF HC 17065229,

15 Plaintiff complained of painful and swollen breasts that leak discharge when he takes medication,

16 and requested medical treatment for his breasts.  UMF 9.  In response to that grievance, Plaintiff

17 was referred by his primary care physician to mental health to discuss the medication at issue, and

18 the medication suspected of causing the breast tenderness was discontinued.  UMF 11, 12.

19 Approximately six months later, Plaintiff submitted SATF HC 18001577, specifically requesting

20 surgery to correct the issue of painful leaking breasts.  UMF 13.  SATF HC 18001577 was denied

21 at the institutional level, and Plaintiff does not dispute that there is no record that SATF HC

22 18001577 was submitted to the headquarters' level for review.  UMF 14, 15.

23         Unlike in *Sheltra*, Plaintiff's second grievance requests a "new course of conduct"—

24 corrective surgery—that was not raised by the first, fully exhausted grievance.  Plaintiff's first

25 grievance complained of painful and swollen breasts when taking his medication, and requested

26 medical treatment.  The discontinuing of Plaintiff's medication attempted to resolve the first

27 grievance.  UMF 5, 9.  When discontinuing the medication alone was not sufficient to alleviate

28 Plaintiff's pain, Plaintiff submitted a second grievance requesting a different, more specific

11

1    course of action to affirmatively treat his condition.  UMF 5, 13.  Accordingly, the Court finds

2    that the continuing-violations doctrine does not apply to Plaintiff's claims.

3    **IV.    Conclusion and Recommendation**

4          For the reasons explained above, the Court finds that Defendants are entitled to summary

5    judgment on the grounds that Plaintiff's claims prior to July 1, 2018 are barred by the statute of

6    limitations and Plaintiff failed to exhaust his administrative remedies for claims arising after July

7    1, 2018.

8          Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary

9    judgment, (ECF No. 36), be GRANTED.

10         These Findings and Recommendations will be submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

12   **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

13   file written objections with the court.  The document should be captioned "Objections to

14   Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed**

15   **fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page**

16   **number if already in the record before the Court.  Any pages filed in excess of the 15-page**

17   **limit may not be considered.**  The parties are advised that failure to file objections within the

18   specified time may result in the waiver of the "right to challenge the magistrate's factual

19   findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter*

20   *v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21

     IT IS SO ORDERED.
22

23      Dated:    **March 11, 2025**              /s/ *Barbara A. McAuliffe*         _

24                                        UNITED STATES MAGISTRATE JUDGE

25

26

27

28